# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LASHAWN WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:14-cv-1965 |
| | ) |
| TOWN OF SMYRNA, TENNESSEE, | ) Judge Sharp |
| and DON GODBY, Officer of Smyrna, | ) |
| Tennessee Police Department, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court are Defendant Don Godby's ("Officer Godby") and Defendant Town of Smyrna's ("Smyrna") Motions for Summary Judgment. (Docket Nos. 33 & 36). Plaintiff Lashawn Williams ("Williams") filed a Response to both. (Docket No. 51). Smyrna and Officer Godby then replied. (Docket Nos. 58 & 59). Officer Godby further filed a Supplemental Reply. (Docket No. 67). For the reasons stated below, the Court will grant Smyrna's Motion for Summary Judgment and deny Officer Godby's Motion for Summary Judgment.

## BACKGROUND[1]

In October 2013, Lashawn Williams was a 28 year old female employed by Calsonic, a vendor located within the Nissan Plant in Smyrna, Tennessee. Williams was a small woman, weighing approximately 115-120 pounds. She worked the night shift, and on October 15, 2013, Williams left work at 8:00 am. Although the exact timeline is disputed, all parties agree that

---
[1] Unless otherwise noted, all background facts are drawn from the Statements of Material Facts, (Docket Nos. 54 & 55).

1

sometime after work, Williams and her friend Kaia Loving ended up at Williams' apartment and started drinking. The two women began drinking inside Williams' apartment but eventually moved outside to Loving's car, either because Williams' mother and child were sleeping inside her apartment, or because Loving wanted to smoke—the exact reason is disputed. Loving and Williams were sitting in Loving's car and drinking for about ten or fifteen minutes before Officer Godby arrived on scene.

Officer Godby stated that when he arrived on scene, he heard screams coming from the direction of Loving's car. (Docket No. 48-5 at 10). Officer Godby approached the car on the driver's side where Loving was sitting. He asked them if they had been fighting and the women replied that they were fine and had just been laughing and being loud. Officer Godby claims he saw Williams make a sudden hand movement, as if to hide something between the car door and the passenger's side seat. (Id. at 27). Officer Godby claims this action made him suspicious, so he called for backup. (Id. at 28). Williams disputes that she ever made a hand movement.

While waiting for backup, Officer Godby asked the two women for identification. Loving handed Officer Godby her driver's license, but Williams had left hers in her apartment. Officer Godby refused to allow Williams to go inside and retrieve it out of safety concerns. Officer Godby offered to call the apartment complex office to confirm that Williams lived there, which Officer Godby claims made Williams "extremely irate." (Docket No. 54 at 15). Williams disputes this, saying that she was "insistent and not irate" but simply did not want a police officer calling her apartment complex as she did not want a mark on her record with the apartment complex. (Id.).

At this point, Officer Godby walked over to the passenger's side of the car where Williams was sitting. Williams admits that when he was speaking to her directly, she raised her

2

voice. Williams admits that she did use curse words "but they were not directed at Officer Godby[.]" (Docket No. 54 at 17). She admits that she was upset, acting "wild," and "getting loud." She further admitted that, during the encounter, she stated she "was not going to be harassed by no fucking police." (Id. at 18-19).

After Officer Schoon—Officer Godby's backup—arrived on the scene, Officer Godby asked Williams to step out of the car. Williams did so voluntarily, and Officer Godby then did a light pat down of Williams' person. During the pat down, Officer Godby found an unopened bottle of "99" brand liquor in Williams' pocket. Officer Godby then asked Williams to turn around and place her hands behind her back, which she also did willingly.

At this point, Officer Godby attempted to handcuff Williams, and the parties disagree about the exact actions each party took. Officer Godby claims that Williams became belligerent and started swinging her arms and kicking him, while Williams claims that Officer Godby "yanked" her arm and that she did not kick him. (Id. at 26). The dash-cam footage does not definitively help either side. During this situation, Officer Schoon yelled "get on the ground," and Williams describes the actions as happening very quickly like "bam." (Id. at 27). Officer Schoon and Officer Godby took Williams to the ground, which resulted in Williams breaking her clavicle. During this encounter, Officer Schoon had been on Williams' left side and Officer Godby had been on Williams' right. Williams' clavicle was broken on her left side.

While Williams was taken to the back of Officer Schoon's car, Loving consented to Officer Godby searching her car. Officer Godby found twelve airplane bottles of liquor, but did not find other drugs or weapons. (Id. at 31; Docket No. 48-5 at 28).

Williams complained of shoulder pain, and the officers called an ambulance to the scene to evaluate her. The parties dispute whether Williams was acting too belligerent to be taken to

the hospital by the ambulance; regardless, Williams was transferred to the hospital in the back of Officer Schoon's car. At the hospital, Williams was found to have a blood alcohol content of 0.159 and a broken left clavicle.

Williams was charged with public intoxication, assault, and resisting arrest. During the course of the state law proceedings concerning these charges, Williams filed a Motion to Supress, which was heard in front of Judge David Bragg in Rutherford County Circuit Court. Judge Bragg determined that "Officer Godby did not have reasonable suspicion to continue the encounter with Williams once he ascertained that Williams and Loving were not fighting." (Docket No. 54 at 37). He ordered that all the evidence "accumulated following the illegal seizure" was to be suppressed and the charges dismissed. (Id.).

Williams has subsequently brought the present case against both Officer Godby and the Town of Smyrna. She claims that both Officer Godby and Smyrna violated her Fourth Amendment right to be free from the use of excessive force. She brings two state law claims against both Defendants: false imprisonment and negligent infliction of emotional distress.

## **LEGAL STANDARD**

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Barnhart

4

v. Pickrel, Schaeffer & Ebeling Co., 12 F.3d 1382, 1388–89 (6th Cir.1993). But the non-moving party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). See Celotex, 477 U.S. at 324; Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." Moore v. Philip Morris Co., 8 F.3d 335, 339–40 (6th Cir. 1993).

## ANALYSIS

### I. Excessive Force Claims

Williams has brought this action pursuant to 42 U.S.C. § 1983 against Officer Godby in his individual capacity and the Town of Smyrna.

> Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law. To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that she was subjected or caused to be subjected to this deprivation by a person acting under color of state law. Section 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.

Campbell v. Anderson County, 695 F. Supp. 2d 764, 770 (E.D. Tenn. 2010). In this case, Williams asserts a deprivation of her Fourth Amendment right to be free from excessive force.

#### A. Fourth Amendment Claim against Officer Godby

##### 1. Excessive Force Claim against Officer Godby

Officer Godby moves for summary judgment on Williams' Fourth Amendment search or seizure claim "if this claim does in fact exist in the Complaint[.]" (Docket No. 34 at 4). The Court agrees that Williams' Complaint is unclear as to which claims apply to which Defendants, and the first three Counts seem to be largely duplicative of each other. (Docket No. 1 at 6-8). The Court cannot discern a separate Fourth Amendment search or seizure claim from Williams' Complaint. However, the Court does recognize multiple Fourth Amendment excessive force

claims in the Complaint, which Williams brings by way of the Fourteenth Amendment. (Docket No. 1 at 7) ("[T]he use of excessive force by Defendants was in violation of the Plaintiff's rights under the Fourth and Fourteenth Amendments[.]"); Thomas v. Cohen, 304 F.3d 563, 569 (6th Cir. 2002) (The Fourth Amendment [is] made applicable to the States by the Fourteenth Amendment[.]").

"[A]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). Consequently, the Court will analyze the excessive force claims under the Fourth Amendment. To the extent that Williams is alleging any separate violations of her Fourteenth Amendment rights, the Complaint does not clearly allege these, and the Court will therefore dismiss any separate Fourteenth Amendment claims.

"The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." Id. at 399. The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[.]" Id. at 396. The Sixth Circuit has further noted that Graham's admonition against using such hindsight bias "carries great weight" if "the events in question happened very quickly." Untalan v. City of Lorain, 430 F.3d 312, 315 (6th Cir. 2005) (quoting Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

In making the reasonableness calculation, Graham instructs courts to look at (1) the severity of the crime, (2) whether the subject posed an immediate threat to the safety of the officers or others, and (3) whether the subject was resisting arrest. Id. at 396. "In determining whether there has been a violation of the Fourth Amendment, [a court] considers not the 'extent of the injury inflicted,' but whether an officer subjects a detainee to 'gratuitous violence.'" Miller v. Sanilac Cty., 606 F.3d 230, 252 (6th Cir. 2010) (quoting Morrison v. Bd. of Tr. of Green Twp., 583 F.3d 394, 400 (6th Cir. 2009)).

In excessive and deadly force cases, the Sixth Circuit generally applies a "temporally segmented analysis to the possible erroneous actions taken by police officers." See Chappell v. City of Cleveland, 585 F.3d 901, 914 (6th Cir. 2009). Commonly referred to as the "segmenting rule" or "segmenting approach," and first adopted in Dickerson v. McClellan, 101 F.3d 1151 (6th Cir. 1996), the Sixth Circuit "embrace[s] a somewhat narrow interpretation of the Supreme Court's mandate that courts look to the totality of the circumstances in determining if excessive force is used." Claybrook v. Birchwell, 274 F.3d 1098, 1103 (6th Cir. 2001). Under the segmenting rule, a court is to "'carve up' the events surrounding the challenged police action and evaluate the reasonableness of the force by looking only at the moments immediately preceding the officer's use of force," an approach that "applies even to encounters lasting very short periods of time." Greathouse v. Couch, 433 Fed.Appx. 370, 372 (6th Cir. 2011). The rationale behind the rule has been explained as follows:

> The time-frame is a crucial aspect of excessive force cases. Other than random attacks, all such cases begin with the decision of a police officer to do something, to help, to arrest, to inquire. If the officer had decided to do nothing, then no force would have been used. In this sense, the police officer always causes the trouble. But it is trouble which the police officer is sworn to cause, which society pays him to cause and which, if kept within constitutional limits, society praises the officer for causing.

7

Dickerson, 101 F.3d at 1161 (quoting Plakas v. Drinski, 19 F.3d 1143, 1150 (7th Cir. 1994)).

In the present situation, a genuine issue of material fact exists concerning the reasonableness of Officer Godby's actions against Williams for a number of reasons. First, Officer Godby argues in his Motion for Summary Judgment that Judge David Bragg's earlier decision that Officer Godby's seizure was improper and illegal should not be considered because Tennessee and the federal government apply different definitions of "seizure"; Officer Godby argues that the Tennessee definition is broader than the federal definition. (Docket No. 34 at 4). While this may be true, Judge Bragg's finding that Officer Godby had no probable cause or reasonable suspicion suggests that a genuine issue of material fact exists with respect to the reasonableness of Officer Godby's actions in placing Williams under arrest after continuing the illegal seizure and the force with which he did so.

Moreover, application of the Graham factors suggests that Officer Godby's Motion for Summary Judgment should not be granted. Williams was arrested for public intoxication, resisting arrest, and assault in regards to resisting arrest, but a dispute exists as to whether Williams actually kicked Officer Godby, whether Officer Godby ever informed Williams why she was asked to step out of the car, and whether Officer Godby ever initially informed Williams that she was under arrest. (Docket No. 55 at 29-31). Furthermore, as stated above, the dash-cam footage does not conclusively show that either side is correct in the dispute about who conducted which act of violence. Consequently, the Court cannot say that Williams' crime was especially violent, or that this was the type of crime for which the force used was necessary. In regards to the second Graham factor, although Williams admits she was acting "wild" and "getting loud," the facts are that she was laughing with her friend and sitting in her car when Officer Goby approached them. Considering no weapon was ever found in the car and the previously

determined lack of suspicion for continuing the conversation, a reasonable jury could find that Williams did not pose an immediate threat to Officer Godby. For the third factor, Officer Godby argues that officers can use force on suspects who resist arrest. Although they may, the first case that Officer Godby analogizes the present situation to, Burchett v. Kiefer, 310 F.3d 937 (6th Cir. 2002), did not involve broken bones. Officer Godby also cites Goodrich v. Everett, 193 Fed. Appx. 551 (6th Cir. 2006), for the proposition that "kneeing and kicking" are acceptable if the plaintiff "was capable of violence and intended to flee." Goodrich, 193 Fed. Appx. at 557; (Docket No. 34 at 14). Although this also may be true, Officer Godby has admitted he had already patted Williams down, did not find any weapons on her, and was on notice that they were in the parking lot of her own apartment complex. Consequently, this case is also distinguishable.

Application of the segmenting approach does not help Officer Godby either. Before the arrest, Williams willingly stepped out of the car; she willingly turned around when Officer Godby requested; and she willingly put her hands behind her back. (Docket No. 55 at 28-30). Officer Godby argues that he instinctively tried to take Williams to the ground because she swung at him. (Docket No. 34 at 15). This is further testified to by Officer Schoon. (Id. at 11). This may very well be the case, and the Court is not labeling Officer Godby as Mr. Bad Example, nor saying that Williams did not channel Boom Boom Mancini; however, in light of Williams' previously voluntary actions, her statement that Officer Godby "yanked" her arm back behind her, Officer Godby's previously conducted pat down that turned up only alcohol and no weapon, and Williams' consequently broken clavicle, Officer Godby has not shown that his actions were objectively reasonable and that no genuine issue of material fact exists.

9

Officer Godby further argues that Williams' broken clavicle occurred on the left side of her body, where Officer Schoon, not Officer Godby, was standing. Officer Godby therefore argues that he cannot be held liable for Officer Schoon's use of force. However, this line of argument is a theory, not evidence—let alone significant, probative evidence—that completely excuses him from liability. Officer Godby is free to present evidence later on in this case showing that harm on the left side of Williams' body was caused by the person on her left side, but Officer Godby has not done that at this stage. Officer Godby admits that Williams' expert "believed that Officer Schoon was *partially* responsible for any force used against" Williams. (Docket No. 34 at 16) (emphasis added). This does not remove all questions of material fact.

### 2. Officer Godby's Qualified Immunity

"[A] defendant in a § 1983 action may raise the affirmative defense of qualified immunity, which shields government officials performing discretionary functions . . . from liability . . . insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." St. John v. Hickey, 411 F.3d 762, 768 (6th Cir. 2005) (internal quotations omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. at 236.

The Court has already determined that a reasonable jury could find a constitutional violation of Williams' Fourth Amendment right to be free from the use of excessive force. The Court "must next consider whether the right was clearly established at the time of the alleged

violation. A right is clearly established if [t]he contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Morphis v. City of Dickson, 2015 U.S. Dist. LEXIS 53073, *13 (M.D. Tenn. Apr. 20, 2015) (internal quotations and citations omitted). Here, Officer Godby should have known that unnecessarily using force to pull Williams to the ground, resulting in a broken bone, violated her right to be free from excessive force in light of the previously discussed factors surrounding the situation. Because genuine issues of material fact still exist concerning the force with which Officer Godby placed Williams under arrest, and because Officer Godby is not entitled to qualified immunity, Officer Godby's Motion for Summary Judgment on Williams' Fourth Amendment excessive force claim will be denied.

### B. Fourth Amendment Claim Against Smyrna

#### 1. Smyrna's Failure to Train

It is well settled that a Section 1983 claim against a municipality cannot be based on a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). However, if it is shown that a municipality's failure to train its employees appropriately has created a "policy or custom" that violates federally protected rights, then the municipality can be held liable for Section 1983 violations. Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). Articulating this basis of liability in the oft-cited City of Canton decision, the Supreme Court stated:

> the inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition … that a municipality can be liable under Section 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a

shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983.

City of Canton v Harris, 489 U.S. 378, 388-89 (1989) (internal citations omitted).

In Ellis v. Cleveland Municipal School District, 455 F.3d 690, 700 (6th Cir. 2006), the Sixth Circuit articulated a three-part test, which states that, in order for a plaintiff to succeed on a Section 1983 claim based on a failure-to-train theory, the plaintiff must show that (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury at issue. Ellis, 455 F.3d at 700.

Plainly, many cases will be vigorously contested under factor two, that is, whether the municipality showed "deliberate indifference" or sufficient carelessness as to training inadequacies that arguably led to injuries. Id. In Ellis, the Sixth Circuit identified two instances in which a finding of deliberate indifference would be appropriate: (1) where the training lapse occurs despite "foreseeable consequences" that will flow from the lapse; and (2) where the training lapse occurs despite "repeated complaints" to the municipality about the issues that should have been dealt with in training. Ellis, 455 F.3d at 700-01.

In a failure to train claim, the focus of the court's inquiry is on the training program. Here, Williams responds to Smyrna's Motion for Summary Judgment by focusing on four sections of Smyrna Police Department's handbook: Use of Force, 2-1; Motor Vehicle Searches, 2-9; Field Interviews and Pat-Down Searches, 2-12; and Arrests and Prisoner Custody, 2-15. (Docket No. 52 at 18). Williams alleges the following inadequacies in this training: (1) Officer Godby failed to follow the training procedures that train officers to communicate with the suspect concerning the actions the officer is taking during the encounter, and this violated the Use of Force Policy; (2) "[t]he Motor Vehicle Searches Policy does not provide proper training

12

or guidelines for the search of a vehicle while occupants are still inside the vehicle"; (3) "Officer Godby's failure to comply with the [Field Interviews and Pat-Down Searches Policy] . . . created a deliberate indifference towards the Plaintiff in that Officer Godby has not been adequately trained in this area"; and (4) "Officer Godby did not give the Plaintiff an explanation for him having Ms. Williams step out of the vehicle" in violation of the Arrests and Prisoner Custody Policy. (Docket No. 52 at 18-19). She states that because genuine issues relate to these alleged inadequacies, summary judgment is improper.

None of these alleged inadequacies, however, suggest that Smyrna ignored repeated complaints or that the training lapsed in spite of foreseeable consequences. On the contrary, the first, third, and fourth of the "inadequacies" that Williams alleges in training are situations where Williams admits Officer Godby was trained; Officer Godby just may not have followed the training. Furthermore, the second "inadequacy"—Smyrna's failure to train officers on how to conduct searches with occupants still in the car—not only fails to amount to deliberate indifference, but also was not the cause of Williams' injury. Williams' injury was caused when she "was taken down by Officer Godby[.]" (Docket No. 52 at 6). This occurred after Officer Godby approached the car, Williams exited the car, and she had placed both hands behind her back. (Id.). Consequently, these alleged inadequacies on the part of Smyrna do not meet the three part test established in Ellis. Williams' claims against Smyrna for excessive force in violation of the Fourth Amendment will be dismissed and Smyrna's Motion for Summary Judgment on this claim will be granted.

Furthermore, because showing "a municipality's failure to train its employees in a relevant respect [that] evidences a 'deliberate indifference' to the rights of its inhabitants" requires a showing that "a shortcoming [may] be properly thought of as a city 'policy or custom'

. . . actionable under § 1983[,]" any of Williams' claims against Smyrna for Fourth Amendment violations based on an unconstitutional policy or custom will also be dismissed.

### 2. Smyrna's Failure to Supervise

"Similar to the failure-to-train inquiry outlined above, to sustain a failure-to-supervise claim, the plaintiff must show that the city acted with deliberate indifference to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the assault." Amerson v. Waterford Twp., 562 Fed. Appx. 484, 492 (6th Cir. 2014) (internal quotations and brackets omitted). For the same reasons cited above, Williams has not shown that a genuine issue of material fact exists concerning Smyrna's failure to supervise Officer Godby, which allegedly resulted in excessive force being used. Consequently, Williams' Fourth Amendment claims premised on Smyrna's failure to supervise will be dismissed. See Marcilis v. Twp. of Redford, 693 F.3d 589, 605 (6th Cir. 2012) (analyzing the failure to train and supervise claims jointly).

## II. State Law Claims

In addition to Fourth Amendment claims, Williams brings state law claims of false imprisonment and negligent infliction of emotional distress against both Smyrna and Officer Godby. These state law claims require analysis of the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-201, *et seq.* ("TGTLA"). "The TGTLA removes immunity for 'injury proximately caused by a negligent act or omission of any employee within the scope of his employment,' but provides a list of exceptions to this removal of immunity." Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010) (quoting Tenn. Code Ann. § 29-20-205). "Injuries that arise out of . . . civil rights claims are one such exception, that is, sovereign immunity continues to apply in those circumstances." Id. (internal quotation marks and citation

omitted). Tennessee courts construe the phrase "civil rights" to include claims arising under Section 1983 and the United States Constitution. Id. A "negligence claim falls within this exception where 'the same circumstances giv[e] rise to both the negligence and civil rights claims.'" Partee v. City of Memphis, 449 F. App'x 444, 448 (6th Cir. 2011) (citing Johnson, 617 F.3d at 872).

### A. State Law Claims Against Officer Godby

Officer Godby moves for summary judgment on Williams' state law claims of false imprisonment and negligent infliction of emotional distress. (Docket 34 at 17). Officer Godby argues that "[i]n cases involving TGTLA claims, courts in this district have often declined to exercise supplemental jurisdiction, citing the Tennessee legislature's preference that such claims be tried exclusively in Davidson County Circuit Court." (Docket No. 34 at 17). Williams' Response in Opposition does not respond to this argument directly, but instead argues that Officer Godby's actions meet the elements of false imprisonment and negligent infliction of emotional distress. (Docket No. 52 at 11-15).

Under the TGTLA, Williams' claim for negligent infliction of emotional distress against Officer Godby will be dismissed. Officer Godby was acting within the scope of his employment and is immune, because the negligence claim concerns the same circumstances as Williams' civil rights claim. However, the false imprisonment claim is an intentional tort, and therefore Officer Godby is not immune in regards to this claim. The Court must next consider whether the false imprisonment claim should be dismissed, so that Williams may refile the claim in Tennessee Circuit Court.

Judge Aleta Trauger noted in Warren v. Metro. Gov't of Nashville, 2015 U.S. Dist. LEXIS 68301, *33-35 (M.D. Tenn. May 27, 2015) that there exists "a split of decision in this

circuit" concerning supplemental claims that may be dismissed due to the Tennessee legislature's exclusivity provision in the TGTLA. 2015 U.S. Dist. LEXIS 68301, *33. Judge Trauger went on to note that

> [m]ost of these cases rely upon Gregory v. Shelby Cty., Tenn., 220 F.3d 433, 446 (6th Cir. 2000) . . . which concluded that the exclusive jurisdiction provision of the TGTLA demonstrates the legislature's "unequivocal preference" for TGTLA claims to be handled by state courts and is an exceptional circumstance that may be used to decline supplemental jurisdiction.
>
> However, neither Gregory nor the Tennessee legislature's preference that TGTLA claims be handled in state courts *requires* dismissal of supplemental TGTLA claims. Id. at 446. To the contrary, the grant of original jurisdiction over TGTLA claims to state circuit courts does not defeat federal jurisdiction. Dillingham v. Millsaps, 809 F.Supp.2d 820, 850-51 (E.D. Tenn. 2011). Indeed:
>
> State legislatures are powerless to impose jurisdictional constraints upon the federal judiciary. Whatever the intent of the Tennessee legislature may have been in enacting the Governmental Tort Liability Act, the authority of the federal courts to appropriately exercise jurisdiction over supplemental state law matters remains undiminished. To rule otherwise would be to imply that a state could nullify two centuries of case law and an entire federal statute on the subject of supplemental jurisdiction by merely expressing a preference that all state law controversies be kept "in-house."
>
> Brown v. City of Memphis, 440 F. Supp. 2d 868, 878 (W.D. Tenn. 2006). Sister courts choosing to retain jurisdiction have also noted the Brown court's additional rationale that dismissal of TGTLA claims can "necessitate duplicative litigation which would be wasteful of judicial and litigant resources." Dillingham, 809 F.Supp.2d at 851 (quoting Brown, 440 F.Supp.2d at 878); see also Birgs v. City of Memphis, 686 F.Supp.2d 776, 778-79 (W.D. Tenn. 2010) (finding that separate state and federal proceedings would "waste the resources of the state and federal courts"); Harris v. McCormack, No. 3:08-cv-00699, 2011 U.S. Dist. LEXIS 7735, 2011 WL 253163, at *4 (M.D. Tenn. Jan. 26, 2011) (concluding that judicial economy, convenience, and fairness counseled against declining jurisdiction over TGTLA claims).

Warren, 2015 U.S. Dist. LEXIS 68301, *33-35. Similar to Judge Trauger's ultimate conclusion in Warren, the facts underlying Williams' constitutional claim against Officer Godby in this situation are the same facts underlying her false imprisonment claim against Officer Godby. The Court finds that it is most efficient for Williams' false imprisonment claim against Officer

16

Godby to remain in federal court; it would make little sense for the parties to litigate the same facts, with the same witnesses, and overlapping discovery in two separate courts.

### B. State Law Claims Against Smyrna

Smyrna also seeks summary judgment on Williams' claims for false imprisonment and negligent infliction of emotional distress. Smyrna argues that it is immune from these tort claims pursuant to the TGTLA. In response, Williams agrees that "Smyrna is entitled to immunity under the [T]GTLA." (Docket No. 52 at 20). Without taking a position as to whether Smyrna is immune from both the negligence claim and the intentional tort, the Court will grant Smyrna summary judgment on Williams' claims for negligent infliction of emotional distress and false imprisonment, seeing as Williams agrees to the dismissal of these claims.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Defendant Smyrna's Motion for Summary Judgment. The Court will deny in part and grant in part Defendant Officer Godby's Motion for Summary Judgment. A separate order shall be entered.

_Kevin H. Sharp_
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE